UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| POWERBAHN, LLC,<br><br>                               Plaintiff,<br><br>v.<br><br>ZWIFT, INC.,<br><br>                               Defendant. | Case No.:  2:17-cv-01393-H (MRWx)<br><br>**CLAIM CONSTRUCTION ORDER** |

In the present action, Plaintiff Powerbahn, LLC asserts claims of patent infringement against Defendant Zwift, Inc., alleging infringement of U.S. Patent Nos. 7,608,015, 7,066,865, and 7,862,476.  (Doc. No. 1, Compl.)  On April 13, 2018, the parties filed their joint claim construction prehearing statement, chart, and worksheet, identifying the disputed claim terms from the patents-in-suit.  (Doc. No. 78.)  On May 18, 2018, the parties each filed an opening claim construction brief.  (Doc. Nos. 83, 84.)  On June 1, 2018, the parties each filed a responsive claim construction brief.[1]  (Doc. Nos. 86, 87.)

---

[1]     The Court notes that Plaintiff's responsive claim construction brief exceeded the page limits set forth in the Court's March 26, 2018 order.  (Doc No. 74.)  The Court reminds the parties that they are expected to be aware of and follow all of the Court's orders and local rules.

The Court held a claim construction hearing for the patents-in-suit on June 8, 2018. Nicholas S. Boebel appeared for Plaintiff Powerbahn. Jonathan Pearce and Michael D. Harris appeared for Defendant Zwift. After considering the parties' briefs, the parties' arguments at the hearing, and all relevant information, the Court construes the disputed terms from the patent-in-suit.

## Background

On February 21, 2017, Plaintiff Powerbahn, LLC filed a complaint for patent infringement against Defendant Zwift, Inc., alleging infringement of U.S. Patent Nos. 7,608,015, 7,066,865, and 7,862,476. (Doc. No. 1, Compl.) Specifically, Plaintiff alleges that Defendant's virtual cycle training software and applications infringe the patents-in-suit through either direct, contributory, or induced infringement. (Id. ¶¶ 8-9, 14-16, 20-22, 25-26.) On April 26, 2017, Defendant filed an answer to Plaintiff's complaint and a counterclaim against Plaintiff. (Doc. No. 19.)

On July 24, 2017, the Court issued a scheduling order. (Doc. No. 29.) On October 19, 2017, the Court denied Plaintiff's motion to enforce settlement agreement. (Doc. No. 45.) On December 1, 2017, the Court issued an amended scheduling order. (Doc. No. 55.) On December 15, 2017, the Court issued a second amended scheduling order. (Doc. No. 66.) On January 25, 2018, the Court issued a third amended scheduling order. (Doc. No. 68.) By the present claim construction briefs, the parties request that the Court construe several disputed claim terms from the patents-in-suit.

## Discussion

### I. Legal Standards for Claim Construction

Claim construction is an issue of law for the court to decide. Teva Pharm. USA, Inc. v. Sandoz, Inc., 135 S. Ct. 831, 838 (2015); Markman v. Westview Instr., Inc., 517 U.S. 370, 372 (1996). Although claim construction is ultimately a question of law, "subsidiary factfinding is sometimes necessary." Teva, 135 S. Ct. at 838.

"The purpose of claim construction is to 'determin[e] the meaning and scope of the patent claims asserted to be infringed.'" O2 Micro Int'l Ltd. v. Beyond Innovation Tech.

Co., 521 F.3d 1351, 1360 (Fed. Cir. 2008). "It is a 'bedrock principle' of patent law that the 'claims of a patent define the invention to which the patentee is entitled the right to exclude.'" Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc).

Claim terms "'are generally given their ordinary and customary meaning[,]'" which "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." Id. at 1312–13. "In some cases, the ordinary meaning of claim language as understood by a [PHOSITA] may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." Id. at 1314. "However, in many cases, the meaning of a claim term as understood by persons of skill in the art is not readily apparent." O2 Micro, 521 F.3d at 1360. If the meaning of the term is not readily apparent, the court must look to "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean," including intrinsic and extrinsic evidence. See Phillips, 415 F.3d at 1314. A court should begin with the intrinsic record, which consists of the language of the claims, the patent specification, and, if in evidence, the prosecution history of the asserted patent. Id.; see also Vederi, LLC v. Google, Inc., 744 F.3d 1376, 1382 (Fed. Cir. 2014) ("In construing claims, this court relies primarily on the claim language, the specification, and the prosecution history.").

In determining the proper construction of a claim, a court should first look to the language of the claims. See Vitronics, 90 F.3d at 1582; see also Comark Commc'ns v. Harris Corp., 156 F.3d 1182, 1186 (Fed. Cir. 1998) ("The appropriate starting point . . . is always with the language of the asserted claim itself."). The context in which a disputed term is used in the asserted claims may provide substantial guidance as to the meaning of the term. See Phillips, 415 F.3d at 1314. In addition, the context in which the disputed term is used in other claims, both asserted and unasserted, may provide guidance because "the usage of a term in one claim can often illuminate the meaning of the same term in other claims." Id. Furthermore, a disputed term should be construed "consistently with its appearance in other places in the same claim or in other claims of the same patent."

Rexnord Corp. v. Laitram Corp., 274 F.3d 1336, 1342 (Fed. Cir. 2001); accord Microprocessor Enhancement Corp. v. Texas Instruments Inc., 520 F.3d 1367, 1375 (Fed. Cir. 2008); see also Paragon Sols., LLC v. Timex Corp., 566 F.3d 1075, 1087 (Fed. Cir. 2009) ("We apply a presumption that the same terms appearing in different portions of the claims should be given the same meaning." (internal quotation marks omitted)). Moreover, "'[a] claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so.'" Vederi, 744 F.3d 1383.

A court must also read claims "in view of the specification, of which they are a part." Markman, 52 F.3d at 979; see 35 U.S.C. § 112(b) ("The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention."). "'Apart from the claim language itself, the specification is the single best guide to the meaning of a claim term.'" Vederi, 744 F.3d at 1382. For example, "a claim construction that excludes [a] preferred embodiment [described in the specification] 'is rarely, if ever, correct and would require highly persuasive evidentiary support.'" Adams Respiratory Therapeutics, Inc. v. Perrigo Co., 616 F.3d 1283, 1290 (Fed. Cir. 2010).

But "[t]he written description part of the specification does not delimit the right to exclude. That is the function and purpose of claims." Markman v. Westview Instruments, Inc., 52 F.3d 967, 980 (Fed. Cir. 1995) (en banc). "[A] claim construction must not import limitations from the specification into the claims." Douglas Dynamics, LLC v. Buyers Products Co., 717 F.3d 1336, 1342 (Fed. Cir. 2013). Therefore, "it is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." Dealertrack, Inc. v. Huber, 674 F.3d 1315, 1327 (Fed. Cir. 2012); see also Kara Tech. Inc. v. Stamps.com Inc., 582 F.3d 1341, 1348 (Fed. Cir. 2009) ("The patentee is entitled to the full scope of his claims, and we will not limit him to his preferred embodiment or import a limitation from the specification into the claims.").

In most situations, analysis of the intrinsic evidence will resolve claim construction disputes. See Vitronics, 90 F.3d at 1583; Teva, 135 S. Ct. at 841. However, "[w]here the intrinsic record is ambiguous, and when necessary," district courts may "rely on extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., 711 F.3d 1348, 1360 (Fed. Cir. 2013) (quoting Phillips, 415 F.3d at 1317). A court must evaluate all extrinsic evidence in light of the intrinsic evidence. Phillips, 415 F.3d at 1319. "Extrinsic evidence may not be used 'to contradict claim meaning that is unambiguous in light of the intrinsic evidence.'" Summit 6, LLC v. Samsung Elecs. Co., 802 F.3d 1283, 1290 (Fed. Cir. 2015); see also Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc., 262 F.3d 1258, 1269 (Fed. Cir. 2001) ("[E]xtrinsic evidence . . . may not be used to vary, contradict, expand, or limit the claim language from how it is defined, even by implication, in the specification or file history."); Vederi, 744 F.3d at 1382 ("[E]xtrinsic evidence may be less reliable than the intrinsic evidence."). In cases where subsidiary facts contained in the extrinsic evidence "are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence." Teva, 135 S. Ct. at 841.

"[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims." O2 Micro, 521 F.3d at 1362. In certain situations, it is appropriate for a court to determine that a claim term needs no construction and its plain and ordinary meaning applies. See id.; Phillips, 415 F.3d at 1314. But "[a] determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." O2 Micro, 521 F.3d at 1361. If the parties dispute the scope of a certain claim term, it is the court's duty to resolve the dispute. Id. at 1362; accord Eon Corp. IP Holdings v. Silver Spring Networks, 815 F.3d 1314, 1318 (Fed. Cir. 2016).

///

## II.     Analysis of the Claim Terms

### A.     The '865 Patent and the '015 Patent

The '865 patent is entitled "bipedal locomotion training and performance evaluation device and method," and the '015 patent is entitled "exercise device and method for simulating physical activity." U.S. Patent No. 7,066,865, at (54) (filed Jun. 27, 2006); U.S. Patent No. 7,608,015, at (54) (filed Oct. 27, 2009). The two patents share a common specification, and both patents are related to a "bipedal locomotion training and performance evaluation device and method." '865 Patent, at 1:25-26. The common specification for the two patents explains: "The present invention is directed to a treadmill apparatus for monitoring the bipedal locomotion of a subject. The apparatus includes a frame and a conveyor movably mounted on the frame for support of the subject." '865 Patent at 14:62-65.

Independent claim 16 of the '865 patent claims:

An apparatus for simulating forces and movement of a human subject during a physical activity, comprising:

a base;

a movable member mounted to the base, the movable member defining a velocity and receiving an input force applied to the movable member by a human subject;

a force-generating device operably coupled to the movable member and applying a resistance force to the movable member;

a sensor configured to provide a signal corresponding to at least one of the velocity of the movable member and an input force applied to the movable member by a human subject; and

a controller configured to control the resistance force applied to the movable member by the force-generating device based, at least in part, on a signal provided by the sensor and a haptic equation incorporating an equation of motion of a human subject performing the physical activity being simulated.

Id. at 61:25-62:6.

Independent claim 1 of the '015 Patent claims:

A method of controlling stationary exercise apparatus of the type having at least one movable component providing a simulation of a corresponding physical activity involving human motion, wherein the exercise apparatus is capable of controlling at least one of the movement and the resistance of the movable component to simulate the effects of changes in momentum that occur during the physical activity, the method comprising:

determining an equation of motion for a physical activity involving human motion that is to be simulated by the exercise apparatus, wherein the equation of motion includes at least one term that accounts for changes in momentum and a corresponding force experienced by a human during the physical activity;

determining a value of a variable corresponding to at least one of a user's mass, a velocity of the movable component of the exercise apparatus, and a force applied to a component of the exercise apparatus during use thereof;

providing a controller;

configuring the controller to control at least one of the movement and the resistance to movement of the at least one movable component to simulate the effects of changes in momentum based, at least in part, on a control parameter determined at least in part by the value of the variable and the equation of motion for the physical activity being simulated by the apparatus.

Id. at 58:50-59:8.

> i. "an apparatus for simulating forces and movement of a human subject during a physical activity" and "stationary exercise apparatus of the type having at least one movable component"

Plaintiff proposes that the claim terms "an apparatus for simulating forces and movement of a human subject during a physical activity" and "stationary exercise apparatus of the type having at least one movable component" be given their plain and ordinary meaning and that no further construction of these claim terms is required. (Doc. No. 84 at 5.) Defendant proposes that these two claim terms be construed as "a treadmill." (Doc. No. 78 at 2.) Here, the parties dispute whether the claimed "apparatus" is limited to

being a treadmill.  Because the parties dispute the scope of these two claim terms, the Court must resolve the parties' dispute.  See O2 Micro, 521 F.3d at 1361; Eon, 815 F.3d at 1318.

The Court begins its analysis of the parties' dispute by examining the claim language.  The claim language in claim 16 of the '865 patent and claims 1 and 10 of the '015 patent does not specifically require that the claimed "apparatus" be a treadmill.  Indeed, none of these claims expressly use the term "treadmill."  See '865 Patent at 61:25-62:6; '015 Patent at 58:50-59:8, 60:14-32.  Thus, an examination of the claim language does not support Defendant's proposed construction.

In support of its contention that the claimed "apparatus" is a treadmill, Defendant relies primarily on language in the common specification for the '865 patent and the '015 patent.  The specification states several times in the "summary of the invention" section that "[t]he present invention is directed to a treadmill apparatus for monitoring the bipedal locomotion [of/for] a subject."  '865 Patent at 14:62-63, 15:3-4, 15:13-15, 15:24-26, 15:33-35.  Indeed, the specification repeats this phrase five times.  See id.  Further, the specification explains several times that "[i]t is . . . an object of the present invention to provide a treadmill apparatus" with various features.  Id. at 13:37-38, 13:40-41, 13:43-44, 13:46-47, 13:49-50, 14:1-2, 14:4-5, 14:7-8; see also id. at 1:25-26, 1:32-34 ("The present invention is related to exercise training devices and methods, . . . more particularly to devices and methods for training athletes utilizing bipedal locomotion.").  Here, the specification describes the invention claimed in the '865 patent and the '015 patent as a whole and provides that it is directed to a treadmill apparatus for monitoring the bipedal locomotion of a subject.

The Federal Circuit has explained that "[w]hen a patentee describes the features of the present invention as a whole, he alerts the reader that this description limits the scope of the invention."  Pacing Techs., LLC v. Garmin Int'l, Inc., 778 F.3d 1021, 1025 (Fed. Cir. 2015) (internal quotation marks omitted); accord Luminara Worldwide, LLC v. Liown Elecs. Co., 814 F.3d 1343, 1353 (Fed. Cir. 2016); Regents of Univ. of Minnesota v. AGA Med. Corp., 717 F.3d 929, 936 (Fed. Cir. 2013); see, e.g., Honeywell Int'l, Inc. v. ITT

Indus., Inc., 452 F.3d 1312, 1318 (Fed. Cir. 2006) ("[T]he written description uses language that leads us to the conclusion that a fuel filter is the only 'fuel injection system component' that the claims cover, and that a fuel filter was not merely discussed as a preferred embodiment. On at least four occasions, the written description refers to the fuel filter as 'this invention' or 'the present invention[.]'"); Nystrom v. TREX Co., 424 F.3d 1136, 1143-45 (Fed. Cir. 2005). Such language constitutes "a clear and unmistakable statement of disavowal," limiting the claims. Pacing Techs., 778 F.3d at 1025. Accordingly, in light of this language in the specification describing the invention as a whole, Defendants' proposed claim construction properly includes that the limitation that the claimed "apparatus" is a treadmill apparatus.[2]

In response, Plaintiff argues that the Court should reject Defendant's proposed construction because a Court should not import limitations from preferred embodiments described in the specification into the claims. (Doc. No. 83 at 6-7.) The Court recognizes that "it is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." Dealertrack, 674 F.3d at 1327. But in the passages at issue, the specification is not merely describing a

---

[2]     In its responsive brief, Plaintiff cites to the Federal Circuit's decision in Unwired Planet, LLC v. Apple Inc., 829 F.3d 1353, 1358-59 (Fed. Cir. 2016), and argues that a mere statement referencing the "present invention" is insufficient to limit otherwise clear claim language. (Doc. No. 87 at 1.) The Court disagrees.

In Unwired Planet, the Federal Circuit, consistent with the above cited cases, reaffirmed the general rule that "statements such as 'the present invention includes . . . ,' 'the present invention is . . . ,' and 'all embodiments of the present invention are . . .' [are] clear and unmistakable statements constituting disavowal or disclaimer." 829 F.3d at 1358. In Unwired Planet, the Federal Circuit ultimately declined to find a disclaimer or disavowal of claim scope, but that was because although the specification of the patent at issue contained a sentencing beginning with the phrase "[t]he present invention relates to," that sentence did not mention the limitation at issue, "a voice communication channel." Id. In contrast, the relevant portions of the common specification for the '865 patent and the '015 patent repeatedly state in one sentence that "[t]he present invention is directed to a treadmill apparatus for monitoring the bipedal locomotion [of/for] a subject." '865 Patent at 14:62-63, 15:3-4, 15:13-15, 15:24-26, 15:33-35. Thus, Unwired Planet is distinguishable from the present case.

preferred embodiment. Rather, the specification is describing features of the present invention as a whole and explaining repeatedly that the invention is directed to a treadmill apparatus for monitoring the bipedal locomotion of a subject.[3] See '865 Patent at 14:62-63, 15:3-4, 15:13-15, 15:24-26, 15:33-35, 13:37-38, 13:40-41, 13:43-44, 13:46-47; 13:49-50. The Federal Circuit has explained that when the patentee uses language describing features of the invention as a whole, such language constitutes "a clear and unmistakable statement of disavowal," limiting the claims. Pacing Techs., 778 F.3d at 1025; Luminara Worldwide, 814 F.3d at 1353; Regents of Univ. of Minnesota, 717 F.3d at 936. Accordingly, the Court rejects Plaintiff's contention that the portions of the specification at issue are merely describing preferred embodiments.[4]

Plaintiff also argues that Defendant's proposed construction should be rejected because it renders language in other unasserted claims superfluous. (Doc. No. 84 at 7.) See Vederi, 744 F.3d 1383 ("'A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so.'"). In support of this contention, Plaintiff relies on the language in the preamble of independent claim 1 of the '865 patent,

---

[3] Plaintiff argues that when describing the objects of the invention, the specification at times explains that a treadmill is only one of a variety of implementations of the claim apparatus. (Doc. No. 84 at 6.) Plaintiff is incorrect.

In support of this argument, Plaintiff relies on language in the specification stating that it is an "object of the present invention to provide an exercise apparatus, particularly a treadmill exercise apparatus." '865 Patent at 13:52-54, 13:56-58, 13:64-66, 14:11-13. But, here, the specification is adding specificity to what constitutes the claimed apparatus, explaining that it is particularly a treadmill apparatus. The specification is not describing a treadmill as merely an example of the claimed apparatus. Thus, these cited passages in the specification actually support Defendant's proposed construction, not Plaintiff's proposal.

[4] At the hearing, Plaintiff noted for the Court a passage in the specification stating: "the scope of the invention should be determined not by the examples given herein, but rather by the appended claims and their legal equivalents." '865 Patent at 59:60-62. The Court does not find Plaintiff's reliance on this generic statement in the specification persuasive. The statement is included in the "detailed description" section of the specification, which is primarily a description of preferred embodiments of the specification. See '865 Patent at 14:56-58, 16:20-23, 58:35-39. However, the passages at issue that the Court relies on to find a disclaimer are not in that section of the specification. Rather, the sentences at issue are in the "summary of the invention" section of the specification. See '865 Patent at 14:62-63, 15:3-4, 15:13-15, 15:24-26, 15:33-35.

which recites: "An apparatus for simulating conditions of bipedal locomotion for a human subject . . . ." '865 Patent at 59:65-66. Plaintiff argues that if the claimed apparatus is a treadmill, then the "apparatus for simulating conditions of bipedal locomotion" language in this claim is unnecessary and superfluous. (Doc. No. 84 at 7.) But Plaintiff fails to adequately explain how this is correct. Plaintiff's contention might be correct if the only use of a treadmill is for simulating conditions of bipedal locomotion. But Plaintiff does not actually make that assertion or present any evidence that would support such an assertion. As a result, the Court rejects Plaintiff's reliance on unasserted claim 1 of the '865 patent to support its claim construction position.

Finally, at the hearing, Plaintiff argued that Defendant's proposed construction should be rejected because the specification references cycling. The Court rejects this argument. The only reference to cycling in the specification is in the "background of the invention" section when the specification refers to various forms of exercise, including power lifting (bench pressing), cycling, parachute sprinting, and Tai Chi. See '865 Patent at 6:22-51. Here, the specification is not describing the claimed invention or an embodiment of the claimed invention.

In sum, the Court adopts Defendant's proposed construction for these two claim terms, and the Court rejects Plaintiff's proposed construction. The Court construes both "an apparatus for simulating forces and movement of a human subject during a physical activity" and "stationary exercise apparatus of the type having at least one movable component" as "a treadmill."

### ii. "moveable member" and "at least one moveable component"

Plaintiff proposes that the claim terms "moveable member" and "at least one moveable component" be given their plain and ordinary meaning and that no further construction of these claim terms is required. (Doc. No. 84 at 7-8.) Defendant proposes that both claim terms be construed as "a revolving belt." (Doc. No. 78 at 3.) Here, the parties dispute whether the claimed "moveable member" and "moveable component" are limited to being a revolving belt. Because the parties dispute the scope of these claim

terms, the Court must resolve the parties' dispute.  See O2 Micro, 521 F.3d at 1361; Eon, 815 F.3d at 1318.

The Court begins its analysis of the parties' dispute by examining the claim language.  The claim language in claim 16 of the '865 patent and claims 1 and 10 of the '015 patent do not specifically require that the claimed "moveable member" or "moveable component" be a revolving belt or conveyor.  Indeed, none of these claims expressly use the term "belt" or "conveyor."  See '865 Patent at 61:25-62:6; '015 Patent at 58:50-59:8, 60:14-32.

Further, dependent claim 17 of the '865 patent claims: "The apparatus of claim 16, wherein: the moveable member comprises a conveyor."  '865 Patent at 62:8-9.  Under the doctrine of claim differentiation, "the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim."  Phillips, 415 F.3d at 1315; accord Enzo Biochem, Inc. v. Applera Corp., 599 F.3d 1325, 1342 (Fed. Cir. 2010).  Thus, under this doctrine, the fact that dependent claim 17 adds the limitation that the moveable member is a conveyor gives rise to a presumption that the movable member in independent claim 16 is not limited to being a conveyor.  As a result, the claim language weighs against Defendant's proposed construction.

Nevertheless, Defendant's proposed construction is supported by the common specification for the '865 patent and the '015 patent.  The specification states several times: "The present invention is also directed to a treadmill apparatus . . . having a conveyor movably mounted on a frame."  '865 Patent at 15:3-5, 15:13-15, 15:24-26, 15:33-35; see also id. at 14:62-65 ("The present invention is directed to a treadmill apparatus for monitoring the bipedal locomotion of a subject.  The apparatus includes a frame and a conveyor movably mounted on the frame for support of the subject.").  Here, the specification is describing the invention claimed in the '865 patent and the '015 patent as a whole and provides that it is directed to a treadmill having a conveyor movably mounted on a frame.

The Federal Circuit has explained that "[w]hen a patentee describes the features of the present invention as a whole, he alerts the reader that this description limits the scope of the invention." Pacing Techs., 778 F.3d at 1025; accord Luminara Worldwide, 814 F.3d at 1353; Regents of Univ. of Minnesota, 717 F.3d at 936. Such language constitutes "a clear and unmistakable statement of disavowal," limiting the claims. Pacing Techs., 778 F.3d at 1025. Further, Plaintiff concedes that if the Court construes the claimed apparatus as being a treadmill, then the moveable member/component should be construed "as a 'conveyor' or 'revolving belt.'" (Doc. No. 87 at 4.) This concession and the disclaimer in the specification are sufficient to rebut the presumption of claim differentiation. See GE Lighting Solutions, LLC v. AgiLight, Inc., 750 F.3d 1304, 1310 (Fed. Cir. 2014) (explaining that a disclaimer in the specification or the prosecution history is sufficient to rebut the presumption of claim differentiation). As a result, the Court adopts Defendant's proposed construction.

In sum, the Court adopts Defendant's proposed construction for this claim term, and the Court rejects Plaintiff's proposed construction. The Court construes both "moveable member" and "at least one moveable component" as "a conveyor or a revolving belt."[5]

### iii.    "controller"

Plaintiff proposes that the claim term "controller" be construed as "a hardware and/or software component." (Doc. No. 84 ay 8.) Defendant proposes that this claim term be construed as "an electronic hardware component." (Doc. No. 78 at 3.) Here, the parties dispute whether the term "controller" can encompass a software component. Because the parties dispute the scope of this claim term, the Court must resolve the parties' dispute. See O2 Micro, 521 F.3d at 1361; Eon, 815 F.3d at 1318.

---

[5]    The Court includes the word "conveyor" in its construction to better match the actual language of the disclaimer in the specification although the Court notes that the parties appear to agree that with respect to these two patents, "conveyor" and "revolving belt" mean the same thing and can be used interchangeably. (See, e.g., Doc. No. 84 at 8; Doc. No. 86 at 4.)

The parties' dispute can be resolved by an examination of the '865 patent and the '015 patent's common specification. The specification explains that figures 5A-5E illustrate exemplary "decision flowchart[s] for the motor/brake controller." '865 Patent at 17:22-33. The specification further explains that "the processes depicted in the flowcharts may be implemented in software or hardware." Id. at 59:13-14. Thus, the specification expressly explains that the controller in some embodiments can by implemented through software. "[A] claim construction that excludes [a] preferred embodiment [described in the specification] 'is rarely, if ever, correct and would require highly persuasive evidentiary support.'" Adams Respiratory Therapeutics, 616 F.3d at 1290. Plaintiff's proposed construction includes embodiments where the controller is implemented through software. Defendant's proposed construction excludes it. As a result, the Court adopts Plaintiff's proposed construction.

In sum, the Court adopts Plaintiff's proposed construction for this claim term, and the Court rejects Defendant's proposed construction. The Court construes the claim term "controller" as "a hardware and/or software component."

                    iv.     "haptic equation"

Plaintiff proposes that the claim term "haptic equation" be construed as "an equation that depends, in part, on feedback information of forces applied by a human subject." (Doc. No. 84 at 9.) Defendant argues that this claim term renders claim 16 of the '865 patent indefinite. (Doc. No. 83 at 11-14.)

Section 112 of the Patent Act requires that a patent's specification "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as [the] invention." 35 U.S.C. § 112, ¶ 2. In Nautilus, Inc. v. Biosig Instruments, Inc., 134 S. Ct. 2120, 2124 (2014), the Supreme Court "h[e]ld that a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." See also id. at 2129 ("[W]e read § 112, ¶ 2 to require that a patent's claims, viewed in light of the specification and prosecution

history, inform those skilled in the art about the scope of the invention with reasonable certainty."). Definiteness is measured from the viewpoint of a PHOSITA at the time the patent was filed. Id. at 2128.

Indefiniteness is a question of law involving underlying factual determinations. Teva Pharm. USA, Inc. v. Sandoz, Inc., 789 F.3d 1335, 1341 (Fed. Cir. 2015); Green Edge Enters., LLC v. Rubber Mulch Etc., LLC, 620 F.3d 1287, 1299 (Fed. Cir. 2010). The party challenging the validity of the patent-in-suit bears the burden of proving indefiniteness by clear and convincing evidence. See Nautilus, 134 S. Ct. at 2130 n.10 (citing Microsoft Corp. v. i4i Ltd. Partnership, 131 S. Ct. 2238, 2242 (2011)); see, e.g., Teva, 789 F.3d at 1345.

Defendant argues that the claim term "haptic equation" renders claim 16 indefinite because the tem lacks any generally understood meaning, and the patent offers no meaning for this claim term. (Doc. No. 83 at 11.) The Court disagrees. The common specification for the '865 patent and the '015 patent contains a detailed explanation of the term "haptic." The specification provides: "For haptic modes of operation, i.e., modes of operation which simulate a real-world or virtual-world environment, the equations of motion utilized by the CPU 310 in controlling the motor/brake controller 370 are derived from equation (1.5*) . . . . ." '865 Patent at 32:17-21. Here, the specification explains that a haptic mode of operation is a mode of operation that simulates a real-world or virtual-world environment. The specification then goes on to give several examples of haptic modes of operation: "[T]he exercise apparatus of the present invention can operate in haptic modes including sprint simulation mode (column I), bob sled simulation mode (column II), isokinetic overspeed mode (column III), isotonic overspeed mode (column IV), and terminal velocity determination mode (column V)." Id. at 33:20-25. Thus, the specification provides an ample description to one skilled in the art of what is meant by the term "haptic."

Defendant primarily argues that term "haptic" is ambiguous because the specification fails to adequately explain what the difference is between a "haptic" mode of operation and a "non-haptic" mode of operation. (Doc. No. 83 at 11-12.) In response,

Plaintiff argues that any confusion between "haptic" and "non-haptic" can be resolved by recognizing that the specification contains a typographical error referring to "forward constant load mode" and "backwards constant mode" as being "non-haptic modes." (Doc. No. 83 at 11 n.3; Doc. No. 87 at 5.) The Court agrees with Plaintiff. Defendant argues that the specification's use of the term "haptic" is confusing because the specification initially describes the "forward constant load mode" and the "backwards constant mode" as "non-haptic" modes, but then later describes them as "haptic" modes. (Doc. No. 86 at 5-6.) Any such confusion is resolved by recognizing that the specification's initial reference to these two modes as being "non-haptic" is a drafting error, and that they are both actually "haptic" modes of operation. In sum, the Court declines to find the term "haptic equation" indefinite in light of the disclosure in the specification.

Further, in support of its indefiniteness argument, Defendant also relies on inventor testimony regarding the term "haptic." (Doc. No. 83 at 12-13 (citing Doc. No. 83-7, Ex. 6).) But the Federal Circuit has explained that "[t]he testimony of an inventor 'cannot be relied on to change the meaning of the claims.' In particular, . . . '[t]he subjective intent of the inventor when he used a particular term is of little or no probative weight in determining the scope of a claim.'" Howmedica Osteonics Corp. v. Wright Medical Technology, Inc., 540 F.3d 1337, 1346 (Fed. Cir. 2008). As such, the Court rejects Defendant's reliance on the inventor testimony at issue.

In sum, the Court rejects Defendant's indefiniteness argument. The Court construes the claim term "haptic equation" as "an equation that depends, in part, on feedback information of forces applied by a human subject."

> v.  "an equation of motion of a human subject performing the physical activity being simulated"

Plaintiff proposes that the claim term "an equation of motion of a human subject performing the physical activity being simulated" be construed as "a mathematical representation of movement by a human for a simulated human physical activity." (Doc. No. 84 at 12.) Defendant proposes that this claim term be construed as "the equation F=ma

(force equals mass times acceleration) to simulate human activity without the use of a flywheel or other actual mass." (Doc. No. 83 at 14; Doc. No. 78 at 4.) Here, the parties dispute whether the claim term "equation of motion" is limited to the equation F=ma, and whether the equation permits use of a flywheel. Because the parties dispute the scope of this claim term, the Court must resolve the parties' dispute. See O2 Micro, 521 F.3d at 1361; Eon, 815 F.3d at 1318.

The Court begins its analysis of the parties' dispute by examining the claim language. The relevant claim language does not explain the meaning of the term "equation of motion." For example, claim 16 of the '865 patent provides that the "controller" utilizes "a haptic equation incorporating an equation of motion of a human subject performing the physical activity being simulated." '865 Patent at 62:5-7. Here, claim 16 does not explain what precisely is meant by "equation of motion." As a result, an examination of the claim language does not resolve the parties' dispute.

The Court turns to the '865 patent and the '015 patent's common specification. Plaintiff argues that the specification contradicts Defendant's proposed construction. (Doc. No. 84 at 12-13.) Figure 1F in the specification and the related text describes an embodiment of the invention that utilizes a flywheel. See '865 Patent at fig. 1F, 16:39-41, 19:40-20:45. Significantly, here, the specification describes an "equation of motion for the flywheel" in terms of "torque" and rotational force. Id. at 19:63-20:12. Thus, the specification describes an embodiment of the invention that utilizes a flywheel and an equation of motion other than F=ma, but Defendant's proposed construction would exclude that embodiment described in figure 1F and the related text. "[A] claim construction that excludes [a] preferred embodiment [described in the specification] 'is rarely, if ever, correct and would require highly persuasive evidentiary support.'" Adams Respiratory Therapeutics, 616 F.3d at 1290. As such, the specification strongly weighs against Defendant's proposed construction.

In support of its proposed claim construction, Defendant relies primarily on statements made during the prosecution of the '015 patent. "Statements made during

prosecution may also affect the scope of the claims." <u>Computer Docking Station Corp. v. Dell, Inc.</u>, 519 F.3d 1366, 1374 (Fed. Cir. 2008). "Under the doctrine of prosecution disclaimer, a patentee may limit the meaning of a claim term by making a clear and unmistakable disavowal of scope during prosecution." <u>Purdue Pharma L.P. v. Endo Pharm. Inc.</u>, 438 F.3d 1123, 1136 (Fed. Cir. 2006); <u>see also</u> <u>Golden Bridge Tech., Inc. v. Apple Inc.</u>, 758 F.3d 1362, 1365 (Fed. Cir. 2014) ("Prosecution disclaimer or disavowal must be clear and unmistakable."). "A patentee could do so, for example, by clearly characterizing the invention in a way to try to overcome rejections based on prior art." <u>Computer Docking</u>, 519 F.3d at 1374.

During the prosecution of the '015 patent, the examiner issued a final rejection of all of the proposed claims. (Doc. No. 83-9, Ex. 8 at 2, 6.) Following that final rejection, the patentee filed an appeal with the PTO. (<u>See</u> <u>id.</u>) In his appellate brief, the patentee stated:

> In summary, an apparatus 100A (page 26, line 9) according to the present invention utilizes an equation of motion (e.g. equation (3.1.2) to calculate target velocity $V_{set}$ (page 72, line 17) utilizing one or more measured variables such as fore force $F_f$ (page 33, line 4) and aft force $F_a$ (page 30, line 13) and actual velocity V (page 72, line 17). Significantly, the present invention simulates forces due to changes in momentum as expressed by the equation $F(t) = m\ A(t)$ (e.g. equation 1.4, (page 44, line 16) without use of a flywheel or other actual mass.

(<u>Id.</u> at 4 (emphasis removed); <u>see also</u> <u>id.</u> at 12, 13.) Defendant argues that the language in the second sentence of the above passage constitutes a disclaimer limiting the "equation of motion" claimed in the invention to the equation F = ma without the use of a flywheel. The Court disagrees. Rather, the Court agrees with Plaintiff that the statement at issue is at best ambiguous. Although the sentence at issue uses the phrase "the present invention," the sentence immediately prior to that sentence states that it is specifically referring to "apparatus 100A," which the appellate brief explains in a preceding paragraph is but one of several embodiments of the claimed invention. (<u>See</u> <u>id.</u> at 3.) Further, in this section of the brief, the patentee expressly refers to "100F (page 28, line 4, Fig. 1F)," the flywheel embodiment, as being another embodiment of the invention. (<u>See</u> <u>id.</u>) In light of this, the

Court declines to find that the passages at issue constitute a clear and unmistakable disavowal of claim scope, and the Court rejects Defendant's prosecution disclaimer argument.

In sum, the Court adopts Plaintiff's proposed construction for this claim term, and the Court rejects Defendant's proposed construction. The Court construes the term "an equation of motion of a human subject performing the physical activity being simulated" as "a mathematical representation of movement by a human for a simulated human physical activity."

vi.  "a component"

Plaintiff proposes that the claim term "a component" be given its plain and ordinary meaning and that no further construction of this claim term is required. (Doc. No. 84 at 14.) Defendant argues that this claim term renders independent claim 10 of the '015 patent indefinite. (Doc. No. 83 at 17-18.)

Defendant argues that the claim term "a component" renders claim 10 indefinite because it is unclear from the claim language whether the term "a component" refers to the "at least one movable component" in claim 10. (Doc. No. 83 at 17-18.) In response, Plaintiff argues that this is an obvious typographical error that is correctable by clarifying that "a component" refers to the "at least one movable component." (Doc. No. 84 at 14.) The Court agrees with Plaintiff.

The Federal Circuit has explained that a district court can act to correct an obvious typographical error where "(1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims." Novo Industries, L.P. v. Micro Molds Corp., 350 F.3d 1348, 1354 (Fed. Cir. 2003). Here, claim 10 of the '015 patent contains an obvious typographical error. Claim 10 of the '015 patent provides that the claimed method utilizes "at least one movable component." '015 Patent at 60:15. But in the middle of claim, claim 10 refers to "a component" and does not expressly state that this component is the "movable component." Id. at 60:25. Nevertheless, as Defendant

concedes, the claim term "a component" in claim 10 "receiv[es] force that likely should be associated with 'the at least one moveable component.'" (Doc. No. 83 at 17.) Thus, it is not subject to reasonable debate that the claim term "at least one movable component" in claim 10 provides an antecedent basis for the subsequent claim term "a component." As a result, the Court corrects the error in claim 10 to clarify that "a component" refers to the movable component.

In sum, the Court rejects Defendant's indefiniteness argument. The Court construes the claim term "a component" as "the movable component."

### vii.   "the movable member"

Plaintiff proposes that the claim term "the movable member" be given its plain and ordinary meaning and that no further construction of this claim term is required. (Doc. No. 84 at 14.) Defendant argues that this claim term renders dependent claim 9 of the '015 patent indefinite. (Doc. No. 83 at 18.)

Defendant argues that the claim term "the movable member" renders claim 9 indefinite because it lacks an antecedent basis in the claim language. (Doc. No. 83 at 18.) In response, Plaintiff argues that this is an obvious typographical error that is correctable by clarifying that "the movable member" in claim 9 refers to the "movable component" in claim 1. (Doc. No. 84 at 14.) The Court agrees with Plaintiff.

The Federal Circuit has explained that a district court can act to correct an obvious typographical error where "(1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims." Novo Industries, 350 F.3d at 1354. Here, claim 9 of the '015 patent contains an obvious typographical error. As Defendant notes, dependent claim 9 contains the term "the movable member," which has no antecedent basis in dependent claim 9 or independent claim 1. See '015 Patent at 10:12. But Defendant also asserts that the terms "movable member" and "movable component" as used in the '865 patent and the '015 are synonymous and possess the same meaning. (Doc. No. 83 at 9-10.) Independent claim 1 contains the claim term "at least one movable

component." '015 Patent at 59:3-4. Thus, it is not subject to reasonable debate that the claim term "at least one movable component" in independent claim 1 of the '015 patent provides the antecedent basis for the claim term "the movable member" in dependent claim 9. As a result, the Court corrects the error in claim 9 to clarify the antecedent basis for the claim term "the movable member."

In sum, the Court rejects Defendant's indefiniteness argument. The Court construes the claim term "the movable member" as "the movable component."

B.    The '476 Patent

The '476 patent is entitled "exercise device" and is related to "a control system and method for exercise equipment and the like." U.S. Patent No. 7,862,476, at (54), 1:42-43 (filed Jan. 4, 2011). The '476 patent provides: "The present invention provides a way to simulate a physical activity in a manner that takes into account the physics of the physical activity being simulated." Id. at 1:43-46.

Claim 28 of the '476 patent claims:

An exercise device for simulating a human physical activity of the type involving an application of a human input force to an object resulting in acceleration of the object in a manner that is capable of being described by an equation of motion of the type that describes the acceleration of a mass under an influence of a force generated by a human in performing the activity, the exercise device comprising:

a structural support;

a user input member movably connected to the structural support for movement relative to the structural support to define a measured variable upon application of an input force to the input member by a user, and wherein the user input member defines a variable resistance force tending to resist movement due to input force applied by a user;

a control system configured to utilize first and second values of the measured variable that are both measured while a user is applying an input force to the input member, and wherein the first value is measured before the second value, and wherein the control system is configured to determine a difference between the first value of the measured variable, and a first value of a virtual

21

2:17-cv-01393-H (MRWx)


variable as a control input to control the resistance force on the user input member, wherein the control system is configured to determine the virtual variable, at least in part, utilizing an equation of motion of the type that describes the acceleration of a mass under an influence of a force input by a human for the human physical activity being simulated, and wherein the control system is configured to utilize the first value of the measured variable as an input variable in the equation of motion such that the resistance force varies in a manner that simulates changes in force due to changes in momentum according to the equation of motion.

Id. at 26:27-60.

> i. "utilizing an equation of motion of the type that describes the acceleration of a mass under an influence of a force input by a human for the human physical activity being simulated"

Plaintiff proposes that the claim term "utilizing an equation of motion of the type that describes the acceleration of a mass under an influence of a force input by a human for the human physical activity being simulated" be construed as "using a mathematical representation of movement characterizing acceleration of a mass from the application of a force input by a human for a simulated human physical activity." (Doc. No. 84 at 14-15.) Defendant proposes that this claim term be construed as "the equation F=ma (force = mass x acceleration) to simulate human activity without the use of a flywheel or other actual mass." (Doc. No. 78 at 5.) Here, the parties dispute whether the claim term "equation of motion" is limited to the equation F=ma, and whether the equation permits use of a flywheel. Because the parties dispute the scope of this claim term, the Court must resolve the parties' dispute. See O2 Micro, 521 F.3d at 1361; Eon, 815 F.3d at 1318.

The Court begins its analysis of the parties' dispute by examining the relevant claim language. Claim 28 of the '476 patent claims "[a]n exercise device" including, among other components, "a control system" "wherein the control system is configured to determine the virtual variable, at least in part, utilizing an equation of motion of the type that describes the acceleration of a mass under an influence of a force input by a human for the human physical activity being simulated." '476 Patent at 26:50-55. Here, the claim

language explains precisely what is meant by the term "equation of motion." Claim 28 explains that it is an equation "of the type that describes the acceleration of a mass under an influence of a force input by a human for the human physical activity being simulated." Id. Indeed, both sides appear to agree that the claim language explains what an "equation of motion" is although neither party incorporates this claim language into their proposed construction. (See Doc. No. 84 at 12; Doc. No. 83 at 18.)

In support of its contention that the claimed "equation of motion" should be limited to F=ma, Defendant relies on two passages in the '476 patent's specification. (Doc. No. 83 at 18-19 (citing '476 Patent at 7:29-35, 23:17-23.) But in these two passages, the specification is merely describing preferred embodiments of the invention. See '476 Patent at 7:29-35, 23:17-23. "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." Dealertrack, 674 F.3d at 1327. Here, there is no clear indication that the claimed "equation of motion" should be limited to the equation F=ma. To the contrary, the specification uses permissive language in explaining that "[p]referably" the equation "F=MA" is used. '476 Patent at 7:32-34. As a result, the Court rejects Defendant's reliance on the specification to support the inclusion of the limitation that the "equation of motion" be limited to F=ma.

In support of its contention that the claimed "equation of motion" should be limited to F=ma, Defendant also relies on the prosecution history of the '476 patent. (Doc. No. 83 at 19 (citing Doc. No. 83-12, Ex. 11 at 9; Doc. No. 83-13, Ex. 12 at 8).) "Under the doctrine of prosecution disclaimer, a patentee may limit the meaning of a claim term by making a clear and unmistakable disavowal of scope during prosecution." Purdue Pharma, 438 F.3d at 1136; see also Golden Bridge Tech., Inc. v. Apple Inc., 758 F.3d 1362, 1365 (Fed. Cir. 2014) ("Prosecution disclaimer or disavowal must be clear and unmistakable."). Here, there is no clear and unmistakable disavowal of claim scope. In one of the cited passages, the patentee describes the equation F=ma as merely being an example of an equation of

motion.[6] (Doc. No. 83-13, Ex. 12 at 8 ("e.g. an equation including a F = ma term").) As a result, the Court rejects Defendant's reliance on the prosecution history to support the inclusion of the limitation that the "equation of motion" be limited to F=ma.

Defendant also argues that the proper construction of the claim term "equation of motion" excludes flywheels. (Doc. No. 83 at 20-23.) In support of this argument, Defendant relies on the following passage from the specification: "In a control system/method according to the present invention, almost all mass and momentum is simulated such that a flywheel is not needed." '476 Patent at 10:24-27. But, this passage of the specification actually detracts from Defendant's argument, rather than supporting it. In this sentence, by stating that "almost all [but not all] mass and momentum is simulated such that a flywheel is not needed," the specification recognizes that some mass and momentum can be simulated with a flywheel. Indeed, elsewhere, the specification explains that the "stationary bike 1 according to the present invention does not necessarily need to include a flywheel or other momentum storage device." Id. at 6:62-65. Explaining that the present invention does not "necessarily need" to include a flywheel is not the same thing as stating that the invention must not include a flywheel. Further, the specification expressly states "a stationary bike according to another aspect of the present invention may include a flywheel having an adjustable moment of inertia." Id. at 19:21-23. Defendant's proposed construction would exclude this embodiment expressly referenced in the specification. As such, the Court rejects Defendant's reliance on the specification. See Adams Respiratory Therapeutics, 616 F.3d at 1290 ("[A] claim construction that excludes [a] preferred embodiment [described in the specification] 'is rarely, if ever, correct and would require highly persuasive evidentiary support.'").

---

[6]     Defendant also relies on Plaintiff's infringement contentions from a prior lawsuit to support its proposed construction. (Doc. No. 83 at 19 (citing Doc. No. 83-14, Ex. 13 at 1).) But in the cited passage, the Plaintiff again describes the equation F=ma as merely being an example of an "equation of motion." (See Doc. No. 83-14, Ex. 13 at 1 ("for example: F = ma").)

Defendant also relies on several passages from the prosecution history to support its argument that the claim term "equation of motion" excludes flywheels. (Doc. No. 83 at 20-21 (citing Doc. No. 83-12, Ex. 11 at 9-11; Doc. No. 83-16, Ex. 15 at 21-24; Doc. No. 83-17, Ex. 16 at 6).) But as Defendant notes, these passages are describing other claims in the '476 patent, including a claim that unlike the claim at issue included express language stating that the claimed control system operated "without use of a flywheel." (See id.; Doc. No. 83-16, Ex. 15 at 4) None of the cited passages discuss the claim at issue, claim 28, or the invention as a whole. As such, the Court declines to incorporate into its construction for this claim term the requirement that the "equation of motion" excludes flywheels.

In sum, the Court declines to adopt either of the parties' proposed construction for this claim term, and the Court instead incorporates the description of this claim term contained in claim 28 of the '476 patent. The Court construes "equation of motion" as "an equation of the type that describes the acceleration of a mass under an influence of a force input by a human for the human physical activity being simulated."

ii.    "measured variable"

Plaintiff proposes that the claim term "measured variable" be construed as "measurement of a value related to a human physical activity being simulated, such as velocity, acceleration, force, or the like." (Doc. No. 84 at 17.) Defendant proposes that this claim term be construed as "a value obtained from a sensor." (Doc. No. 78 at 5.) Here, the parties dispute whether the value associated with the term "measured variable" must be obtained from a sensor. Because the parties dispute the scope of this claim term, the Court must resolve the parties' dispute. See O2 Micro, 521 F.3d at 1361; Eon, 815 F.3d at 1318.

The Court begins its analysis of the parties' dispute by examining the claim language. The claim language for the claim at issue, claim 28, does not expressly require that the measured variable be obtained from a sensor. See '476 Patent at 26:27-60. This is notable because other claims in the '476 patent do include that requirement. For example, claim 20 of the '476 patent claims "[a] stationary exercise bike, comprising," among other elements, "a sensor configured to measure a variable associated with the crank

during operation from which an actual velocity can be determined." '476 Patent at 25:9, 25:16-18. That claim 20 expressly recites the requirement of "a sensor" but claim 28 does not, counsels against reading the requirement of a "sensor" into claim 28. See Phillips, 415 F.3d at 1314 ("[T]he usage of a term in one claim can often illuminate the meaning of the same term in other claims."); Vederi, 744 F.3d 1383 ("'A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so.'"). As a result, the claim language of the '476 patent does not support Defendant's proposed construction.

In support its contention that the measured variable must be obtained from a sensor, Defendant relies on several passages in the '476 patent's specification. (Doc. No. 83 at 23 (citing '476 patent at 6:26-28, 7:14-21, 8:1-13, 10:58-66, 12:38-42, 13:31-38, 13:59-66, 14:24-29, 14:31-33, 16:15-17, 16:21-39, 16:56-60).) But in these cited passages, the specification is describing preferred embodiments of the claimed invention. See '476 patent at 6:26-28, 7:14-21, 8:1-13, 10:58-66, 12:38-42, 13:31-38, 13:59-66, 14:24-29, 14:31-33, 16:15-17, 16:21-39, 16:56-60. "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." Dealertrack, 674 F.3d at 1327. Here, there is no clear indication that claim 28 should be limited to include the requirement of a sensor. To the contrary, the specification uses permissive language in describing these embodiments and describes the sensor as being optional. The specification states: "Sensors not described in the basic functionality of this method can be helpful, but not necessary, to the function of the exercise equipment." '476 Patent at 7:66-8:1. Moreover, as Defendant acknowledges, the specification of the '476 patent describes an embodiment of the invention that "does not include a force sensor 6." Id. at 17:55-58. "[A] claim construction that excludes [a] preferred embodiment [described in the specification] 'is rarely, if ever, correct and would require highly persuasive evidentiary support.'" Adams Respiratory Therapeutics, 616 F.3d at 1290. Defendant's proposed construction would exclude this embodiment

described in the specification. In light of this language in the specification and the language in the claims, the Court declines to include the requirement of a sensor in its construction for the term "measured variable," and the Court declines to adopt Defendant's proposed construction.

Plaintiff's proposed construction is supported by the specification's summary of the invention. In that section, the specification provides:

> the control system and method takes into account the physics of the corresponding physical activity to generate a virtual or predicted value of a variable such as velocity, acceleration, force, or the like. The difference between the virtual or expected physical variable and a measured variable is used as a control input to control resistance forces of the exercise equipment in a way that causes the user to experience as forces that are the same or similar to the forces that would be encountered if the user were actually performing the physical activity rather than using the exercise equipment.

'476 Patent at 1:46-57. Here, the specification explains that the measure variable is the measurement of a value related to a physical activity.

In sum, the Court adopts Plaintiff's proposed construction for this claim term, and the Court rejects Defendant's proposed construction. The Court construes the claim term "measured variable" as "measurement of a value related to a human physical activity being simulated, such as velocity, acceleration, force, or the like."[7]

### iii.     "virtual variable"

Plaintiff proposes that the claim term "virtual variable" be construed as "a predicted or anticipated value related to a human physical activity being simulated, such as velocity, acceleration, force, or the like." (Doc. No. 84 at 18.) Defendant proposes that this claim term be construed as "a computed value determined using an equation of motion." (Doc. No. 78 at 6.) Here, the parties dispute whether the term "virtual variable" is determined

---

[7]     Defendant objects to Plaintiff's inclusion of the phrase "or the like" in its proposed construction for this claim term. (Doc. No. 83 at 23.) Defendant argues that this phrase is ambiguous. (Id.) The Court rejects Defendant's contention. The phrase "and the like" is taken directly from the '476 patent's specification. See '476 Patent at 1:50. And the preceding examples given in the specification of "velocity, acceleration, and force" are sufficient to render the phrase "and the like" not ambiguous.

using an equation of motion. Because the parties dispute the scope of this claim term, the Court must resolve the parties' dispute. See O2 Micro, 521 F.3d at 1361; Eon, 815 F.3d at 1318.

The Court begins its analysis of the parties' dispute by reviewing the claim language. The claim language supports Defendant's proposed construction. Claim 28 provides, in relevant part: "where in the control system is configured to determine the virtual variable, at least in part, utilizing an equation of motion . . . ." '476 Patent at 26:50-52. Thus, the claim language states that the virtual variable is determined in part by using an equation of motion. Nevertheless, the Court agrees with Plaintiff that the virtual variable need not be computed solely from an equation of motion in light of above claim language explaining that it need only be determined "in part" using an equation of motion.

Further, the specification supports Plaintiff's proposed construction. The specification of the '476 patent provides: "the control system and method takes into account the physics of the corresponding physical activity to generate a virtual or predicted value of a variable such as velocity, acceleration, force, or the like." '476 Patent at 1:46-50. Here, the specification explains that the virtual variable is a virtual or predicted value related to a corresponding physical activity, such as velocity, acceleration, force, or the like. Thus, Plaintiff's proposed construction is also supported by the intrinsic record.

In sum, both Plaintiff's and Defendant's proposed constructions are supported in part by the intrinsic record. As a result, the Court adopts in part Plaintiff's proposed construction, and the Court adopts in part Defendant's proposed construction. The Court construes the term "virtual variable" as "a computed predicted or anticipated value related to a human physical activity being simulated, such as velocity, acceleration, force, or the like that is determined in part using an equation of motion."

///

///

///

## Conclusion

For the reasons above, the Court adopts the constructions set forth above.

**IT IS SO ORDERED.**

DATED: June 8, 2018

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT